IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GRUMA CORPORATION,

    Plaintiff - Counterdefendant,

vs.                                                                  No. 97-822 WWD/RLP

GOLDEN EAGLE DISTRIBUTING, INC.,

    Defendant - Counterclaimant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon plaintiff's Motion for Summary Judgment, filed February 9, 1998 [33-1]. Plaintiff ("Mission" or "Gruma"),[1] is in the business of the production of tortillas, tortilla chips & other food products. Defendant ("Golden Eagle") is a New Mexico food product distributor. Having reviewed the briefs and applicable case law, I find that the motion should be denied.

**Background**

The parties entered into distribution agreements in 1991 and 1995 giving Golden Eagle the exclusive right to promote, distribute and sell Mission's food products in north and central New Mexico ("Mission territory"). Plaintiff terminated defendant's distributorship on November 13, 1996 based on defendant's alleged failure to provide adequate service and for marketing competing products. Compl., ¶ 22-26. Plaintiff alleges breach of contract and intentional interference with business relations and prospective customers.

---

[1] Mission, or "Mission / Arga" was Gruma's predecessor in interest.

Defendant claims that Mission tried to oust it from the Mission territory markets it had developed, and intentionally interfered with its ability to serve its store door customers in order to have a pretext for terminating the 1995 agreement without having to compensate defendant.[2] In addition to breach of contract, defendant alleges other grounds for relief in its Counterclaim: Breach of Covenant of Good Faith & Fair Dealing; Food Products Delivery Violations; and Tortious Interference with Advantageous Business Relationships.[3]

## Discussion

Plaintiff's summary judgment motion centers on a provision of the Store Door Distributor Agreement entered into by the parties in 1995 in which plaintiff allowed Golden Eagle to continue distributing products of the company, Eagle Brands, Inc. ("Eagle"):[4]

> 3. Company hereby consents to Distributor's marketing, promoting, soliciting orders for, selling, and delivering of Eagle Brand snack products, even though such products are competitive with the Products.

Ex. D to "Store Door Distributor Agreement (Ex. E in Deft's Opp. to Mot. for Sum. J ("Resp.")). Plaintiff says that defendant's handling of Old El Paso salsa did not fall within this exception provision and thus directly violated the agreement. Defendant insists that its handling of the salsa comes within the scope of the provision because the products it had been distributing

---

[2] The 1995 agreement added a new provision where Mission agreed to pay Golden Eagle a sum of money in the event it terminates the agreement without cause. Countercl., ¶ 25.

[3] The present motion addresses none of the issues in these other claims. Also, plaintiff does not specify whether it seeks summary judgment for defendant's counterclaim for breach of contract, or its own. Plaintiff's position is that defendant's Counts II, III and IV are subsumed into the breach of contract claim. Ans to Countercl., at 9.

[4] The company is referred to as "Eagle Brands, Inc." in the Complaint, ¶ 7, but as "Eagle Snacks, Inc." in the Counterclaim, ¶ 4.

2

for Eagle included not only products manufactured by Eagle but also those which were manufactured under other brand names and supplied to Eagle for marketing.  <u>Countercl.</u>, ¶ 4.

*Summary Judgment Standard*

Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The non-moving party must present enough evidence to allow a reasonable jury to find for the non-moving party, and cannot rest upon mere allegations or denials of the pleadings.  <u>Orback v. Hewlett-Packard Co.</u>, 97 F.3d 429, 432 (10th Cir. 1996) (citing <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1551-52 (10th Cir. 1995)).

*Analysis*

The first five pages of the 1995 agreement lists numerous definitions of terms used throughout the contract, but does not include a definition of "Eagle Brand snack products." <u>Resp.</u>, ¶ Ex. E.  Gruma maintains that a plain reading of the phrase dictates that it refers to only those food products which bear the brand name "Eagle," and cannot be construed to include other products defendant was handling for Eagle Brand.  While this interpretation has a certain common sense appeal, it is insufficient as the sole basis for determining what the parties' intentions were when they agreed to the exception provision.

In support of its theory, plaintiff relies on the sole affidavit of Stan Tresslar, sales manager of Mission Foods Corp., which states that Old El Paso salsa is not manufactured by Eagle Snacks, Inc., and that the word "Eagle" does not appear anywhere on the label of the salsa.  <u>Tresslar Aff.</u>, ¶ 3.  Even assuming this information is accurate, it still begs the question of whether the exclusion provision encompasses the products which are *not* manufactured by Eagle or which do *not* carry

3

the "Eagle" label.  Plaintiff offers a plausible construction of the phrase "Eagle brand snacks," but not one which is clear and unambiguous.

Gruma argues that any acquiescence or waiver theory posited by defendant fails because of the waiver provision contained in the 1995 agreement.[5]  See Resp., Hammonds III, Aff. (maintaining that plaintiff knew that it was distributing Old El Paso salsa for many months before plaintiff terminated the distributorship).  However, while Gruma's acquiescence of defendant's conduct (which Gruma neither concedes nor denies) may not constitute a waiver due to the existence of the waiver provision, it may serve as extrinsic evidence used in determining the intent of the parties regarding the exception provision.  C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 509 (1991)  ("question of interpretation of language and conduct . . . is a question of fact where that meaning depends on reasonable but conflicting inferences to be drawn from events occurring or circumstances existing before, during, or after negotiation of the contract").

Gruma further contends that even if the provision were construed to include any product made available by Eagle Snacks, Inc., this broad definition must be construed to have expired when Eagle Snacks stopped doing business in 1996.[6]  Here again, plaintiff's rationale does not dispose of the factual dispute surrounding the meaning of the provision.  It is not clear either from the agreement language or the evidence presented by the parties at this point whether the exclusion provision referenced the *wholesaler* (Eagle Snacks, Inc.) or the *food products*

---

[5] The provision states that no term or provision in the agreement is deemed waived, and no breach excused (such as failure to insist on strict performance),  unless the waiver is in writing. Resp., Ex. E to Smidt Aff. at 23, § 15.f.

[6] At the pre-trial conference held on March 30, 1998, counsel informed me that Eagle Snacks, Inc. stopped doing business in January, 1996, although it was processing pending orders until around March 1996.

themselves. If the focus was on the food products authorized for defendant's handling instead of on the wholesaler, then the fact that Eagle went out of business would be immaterial under the broad construction. See Surreply at 2, 3.

Defendant submits affidavits of Golden Eagle's president and also its sales manager which attest to the fact that it became Mission's distributor only "on condition that it be allowed to promote, distribute and sell any product or product line offered by Eagle Snack, Inc. or that it might offer in the future." Resp., Hammond Jr. Aff, & Tallant Aff. In-house counsel for Golden Eagle, Thomas Smidt II, attested that it was his understanding during negotiations that the language in the provision "encompassed all products that Eagle Snacks, Inc. made available or might make available. . . ." Resp., Smidt Aff., ¶ 11.

The court's role is to interpret and enforce a contract as written by the parties. Boatwright v. Howard, 102 N.M. 262, 264 (1985). In New Mexico, "clear and unambiguous" contract provisions are conclusive. Awbrey v. Pennzoil Co., 961 F.2d 928, 930 (10th Cir. 1992); accord, Bank of New Mexico v. Sholer, 102 N.M. 78, 79 (1984) (citing Rushing v. Lovelace-Bataan Health Program, 93 N.M. 168, 169 (1979)). In this case, because the exclusion provision is easily open to two plausible interpretations, it is not unambiguous, and therefore not conclusive. See Loretto Mall at 509 (whether an agreement contains an ambiguity is a question of law).

Looking at the evidence most favorable to defendant, defendant has shown that a dispute of material fact exists as to the meaning the parties attached to the term "Eagle Brand snack products" at the time they agreed to the provision. Dreiling v. Peugot Motors of America, Inc., 850 F.2d 1373, 1377 (10th Cir. 1988). Based on the evidence presented by the parties and

5

additional evidence which may be submitted at trial, a reasonable jury could possibly find that the exclusion provision included not only products manufactured by Eagle but also those which were manufactured under other brand names and supplied to Eagle for marketing.  See <u>Loretto Mall</u>, 112 N.M. at 508  (in determining whether a term or expression to which the parties have agreed is unclear, court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance).[7]

**WHEREFORE,**

**IT IS ORDERED** that plaintiff's Motion for Summary Judgment [33-1] be, and hereby is, **denied**.

UNITED STATES MAGISTRATE JUDGE

---

[7] Admission of extrinsic evidence is permissible when used for the purpose of "ascertaining the meaning of doubtful expressions in the instrument."  <u>Loretto Mall</u> at 508.